UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

I. CAROL WILLIAMS,

    Plaintiff,

v.

CHAD WOLF,

    Defendant.

Case No. 19-cv-00652-JCS

**ORDER REGARDING MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Re: Dkt. No. 22

## I. INTRODUCTION

Plaintiff I. Carol Williams brings this action alleging discrimination and retaliation in the course of her employment as a paralegal for the United States Department of Homeland Security ("DHS"). Defendant Chad Wolf, Acting Secretary of Homeland Security,[1] (the "Secretary") moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and failure to state a claim under Rule 12(b)(6). The Court held a hearing on September 13, 2019. For the reasons discussed below, the Secretary's motion is DENIED with respect to jurisdiction but GRANTED with respect to failure to state a claim, and Williams's complaint is DISMISSED with leave to amend.[2]

## II. BACKGROUND

### A. Allegations of the Second Amended Complaint and Facts Subject to Notice

Because a plaintiff's factual allegations are generally taken as true in resolving a motion to dismiss, this background sections summarizes the allegations of Williams's complaint as if true.

---

[1] Wolf became Acting Secretary on November 13, 2019, and is automatically substituted for former Acting Secretary Kevin McAleenan as the defendant in this action. *See* Fed. R. Civ. P. 25(d).

[2] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

Nothing in this section should be interpreted as resolving any issue of fact that might be disputed at a later stage of the case.

### 1. Early Denials of Training and Experience and 2015 Grievance

Williams, who is African American, began working for the U.S. Customs and Border Protection ("CBP") Fines, Penalties, and Forfeitures Office in San Francisco as a paralegal specialist in 2011, at the salary grade GS-11. 2d Am. Compl. ("SAC," dkt. 18) ¶¶ 6–7. She is the only African American person in her office. *Id.* ¶ 37. Williams provided satisfactory job performance and received consistently positive proficiency reviews. *Id.* ¶ 8. Despite her satisfactory performance, Williams's second-level supervisor Russell Holsopple denied her an opportunity to attend a training program in December of 2014, and her direct supervisor Debra Zeng denied her an opportunity to take on temporary duty assignments in other offices. *Id.* ¶ 9. Williams alleges that the training and experience in other offices would have been relevant to consideration of whether she should be promoted to a more senior position at salary grade GS-12. *Id.* A different GS-11 paralegal in the same office, who is white, was given an opportunity to attend a similar training session in June of 2015, less than two years after she was hired, and another paralegal, who is Asian, was given a temporary duty assignment. *Id.* ¶ 37.

Williams filed a grievance against Zeng and Holsopple on June 22, 2015 alleging that they willfully obstructed her right to compete for employment. *Id.* ¶ 11. "On September 23, 2015, Ms. Williams sent a memorandum to Ms. Zeng and Mr. Holsopple in which she discussed, among other topics, her position that she would consider as workplace harassment and retaliation a failure by Ms. Zeng and Mr. Holsopple to establish a professional and respectful working relationship with her and/or continuation of criticism of her alleged lack of work productivity/performance." *Id.* ¶ 12.

In December of 2015, unbeknownst to Williams at the time, Zeng told another GS-11 paralegal specialist, Xenia Mannone, that "Zeng could never support a certain GS-11 paralegal who had filed a grievance against Zeng," referring to Williams. *Id.* ¶ 13. In January of 2016, Williams told Zeng that she was interested in pursuing a promotion to GS-12 and asked Zeng to speak to Holsopple and otherwise help Williams achieve the promotion. *Id.* ¶ 14. Zeng

nevertheless denied Williams additional opportunities to work temporary duty assignments in other officers in March and May of 2016. *Id.* ¶ 15.

### 2. 2016 OIG Complaint and Performance Review

Williams filed a complaint in September of 2016 with the Office of Inspector General ("OIG") alleging systematic racial discrimination and retaliation by Zeng and Holsopple that prevented her from obtaining a promotion to GS-12, and amended her complaint within days to add the statements that Zeng made to Mannone, which Williams first learned of at that time. *Id.* ¶ 16.

On November 9, 2016, Williams met with Zeng for an annual performance review, and Zeng told her that her work was generally good except for a lack of attention to detail. *Id.* ¶ 17. Williams said that she did not want to participate in the performance review until her OIG complaint was resolved. *Id.* The following day, Holsopple asked to meet with Williams about the performance review, and Williams asked for a third-party representative and to postpone the meeting. *Id.* ¶ 18. Around two weeks later, on November 23, 2016, Williams gave the OIG consent to reveal her identity with respect to her pending complaint. *Id.* ¶ 19. Two days after that, Williams met with Zeng to complete the performance review, and Zeng issued the review, which contained negative comments for the first time in Williams's tenure with the Fines, Penalties, and Forfeitures Office. *Id.* ¶ 20.

### 3. Issues Related to Workplace Conversations and Dress Code

On December 7, 2016, Zeng issued Williams a "Memorandum of Instruction" regarding other employees' complaints that Williams and a coworker engaged in long conversations unrelated to work. *Id.* ¶ 21. Williams disputed the allegations and complained to Zeng about discrimination and harassment. *Id.* Later that month, Holsopple issued a "Letter of Reprimand" to Williams for her purported failure to follow Zeng's instructions. *Id.* ¶ 22. Williams responded by letter stating her position that the Letter of Reprimand constituted ongoing discrimination and retaliation. *Id.* Zeng and Holsopple met with Williams in January of 2017 "regarding an alleged long conversation between Ms. Williams and Ms. Mannone" purportedly unrelated to work, but Williams "explained that they were discussing work matters." *Id.* ¶ 23. Since January of 2017,

3

Zeng and Holsopple have assigned Williams more difficult work and a larger caseload than an Asian paralegal specialist in the office who is at the more senior GS-12 salary grade. *Id.* ¶ 24.

On February 16, 2018, Zeng informed Williams by email that she was in violation of the office dress code. *Id.* ¶ 27. Williams responded that her coworkers had violated the dress code for more than a year, and asked Zeng and Holsopple not to apply the policy in a discriminatory or retaliatory manner. *Id.*

### 4. New GS-12 Positions Fail to Materialize

One of the ways in which employees in the San Francisco Fines, Penalties, and Forfeitures office receive promotions consists of Holsopple identifying a need for a more senior position and approaching CBP management to request that a position be made available for a promotion within the office; this process has led to the creation of several positions in the office. *Id.* ¶¶ 10, 35.

In the summer of 2017, Director of Field Operations Brian Humphrey stated that some paralegals in the San Francisco Fines, Penalties, and Forfeitures Office would receive promotions to GS-12. *Id.* ¶ 25. Another senior employee of the Office of Field Operations, Todd Owen, visited the San Francisco office in March of 2018 and stated that GS-12 positions would be made available nationwide. *Id.* ¶ 28. From the fall of 2017 through 2018, Holsopple stated in staff meetings that GS-12 positions would be made available in Williams's office, and from November of 2017 through January of 2019, Holsopple "began what he claimed was mentoring and monthly meetings with Ms. Williams for the purported purpose of positioning her for a promotion to a GS-12 Paralegal Specialist position." *Id.* ¶¶ 26, 29. Williams was led to believe that a GS-12 position would be made available for her in San Francisco. *Id.* ¶ 28. On November 6, 2018, however, Owen announced new GS-12 paralegal positions in eight offices, but none in San Francisco. *Id.*

Williams met with Holsopple two days later to discuss the fact that no GS-12 positions were created in San Francisco, to request that she be considered for such a position, and to express her desire to make her concerns known to Owen and Humphrey. *Id.* ¶ 31. Holsopple told Williams that Humphrey had the authority to create new positions. *Id.* "Williams memorialized the meeting in an email she sent that day," apparently to members of the Executive Commission.

4

*Id.*; *see id.* ¶ 32.

On November 14, 2018, Holsopple asked to meet with Williams regarding her email, and ordered her to meet with him after she initially declined to do so. *Id.* ¶ 32. Holsopple issued Williams a "Letter of Caution" for purportedly failing to follow instructions and using poor judgment in circumventing the chain of command. *Id.*

Williams remains at salary grade GS-11. *Id.* ¶ 34. Williams is the only African American person in her office and the only person who has not been promoted in the time since she was hired, except for one employee who did not seek a promotion and retired in 2018. *Id.* ¶ 37. Another paralegal, who is Asian, was promoted from GS-11 to GS-12. *Id.* A promotion to GS-12 is a prerequisite for promotion to many attorney positions at DHS. *Id.* ¶ 36. It is not clear from the complaint whether Williams is an attorney.

### 5. 2019 Investigation

After Williams filed this action in February of 2019, Zeng notified Williams in June of 2019 that Williams was the subject of an investigation for purportedly neglecting her duties and failing to follow instructions, allegations that Williams denies. *Id.* ¶ 33.

### 6. Contact with the EEO Counselor

Williams has contacted the DHS Equal Employment Opportunity ("EEO") counselor three times.

First, on January 2, 2017, Williams "raised the issues of race discrimination and retaliation with respect to the negative comments in her 2016 Employee Proficiency Review; the December 7, 2016 Memorandum of Instruction; the December 22, 2016 Letter of Reprimand; and the January 24, 2017 request to meet with her supervisors." *Id.* ¶ 38. She filed a formal complaint on April 5, 2017 and received a final decision on June 9, 2018. *Id.*; Duncan Decl. (dkt. 22-2) Exs. A, B.[3] DHS's EEO office determined that Williams failed to show that the Letter of Reprimand was pretextual, that any purported mistreatment was based on race or protected activity, or that her

---

[3] The Secretary properly requests judicial notice of records from Williams's EEO proceedings as public records and as incorporated by reference by her complaint. *See* Request for Judicial Notice (dkt. 22-1).

treatment rose to the level of harassment. Duncan Decl. Ex. B. Williams appealed that decision but did not receive a response within 180 days. SAC ¶ 38. On June 4, 2019, the Equal Employment Opportunity Commission ("EEOC") issued a letter stating that Williams had withdrawn her appeal after filing this action. Duncan Decl. Ex. C.

On April 20, 2018, Williams "raised the issues of race discrimination and retaliation with respect to being denied a promotion to a GS-12 Paralegal Specialist position and the ability to be promoted to an attorney position as continuing violation since December 14, 2015." SAC ¶ 39. She filed a formal complaint on May 30, 2018, and received a final decision on November 21, 2018. *Id.*; Duncan Decl. Exs. D, E. The EEO dismissed this complaint for failure to timely meet with an EEO counselor and failure to show actionable harm. Duncan Decl. Ex. E.

On November 16, 2018, Williams "raised the issues of race discrimination and retaliation with respect to being denied a promotion to a GS-12 Paralegal Specialist position on November 6, 2018 and as a continuing violation since December 14, 2015, being denied the ability to promoted to an attorney position as continuing violation since December 14, 2015, and the November 14, 2018 Letter of Caution." SAC ¶ 40. Williams filed a formal complaint on December 17, 2018, but has not received a final decision in the more than 180 days since then. *Id.*; Duncan Decl. Ex. E. In February of 2019, DHS accepted for investigation Williams's claims related to: (1) the failure to add GS-12 positions in San Francisco in November of 2018; and (2) the November 14, 2018 Letter of Caution. Duncan Decl. Ex. G. DHS dismissed as previously decided claims based on the 2015 denial of training, 2015 comment by Zeng that she would not support Williams for a promotion, 2015 and 2016 denials of temporary duty opportunities, and December 2016 Letter of Reprimand. *Id.*

**B. Procedural History, Claims Asserted, and Arguments for Dismissal**

Williams filed this action on February 6, 2019, and filed a first amended complaint on February 12, 2019, before the Secretary was served. *See* Compl. (dkt. 1); 1st Am. Compl. (dkt. 5). The parties stipulated on May 9, 2018 to allow Williams to file her second amended complaint. Stipulation (dkt. 15). The operative second amended complaint asserts claims for discrimination on the basis of race and retaliation in violation of Title VII of the Civil Rights Act of 1964. SAC

¶¶ 41–44. The Secretary's present motion to dismiss raises arguments of administrative exhaustion, timeliness, and the sufficiency of Williams's allegations that any adverse action was taken on account of her race or protected activity. *See generally* Mot. (dkt. 22).

**III. ANALYSIS**

**A. Legal Standard**

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint "'must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

The Secretary also moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Federal courts are courts of limited jurisdiction, and thus "have a continuing independent obligation to determine whether subject-matter jurisdiction exists" over a given claim. *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012) (internal quotation marks and citations omitted); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject matter jurisdiction. *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "If the defendant brings a facial attack, arguing that the allegations in the complaint are insufficient to demonstrate the existence of jurisdiction, the Court's inquiry is much the same as when ruling on a motion to dismiss brought under Rule 12(b)(6)." *Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1124 (S.D. Cal. 2005) (citing Moore's Federal Practice § 12.30). Because the Secretary relies only on Williams's complaint and on material subject to judicial notice, the Secretary's motion under Rule 12(b)(1) is a facial challenge to subject matter jurisdiction.

**B. Jurisdictional Arguments Regarding Scope of Administrative Complaints**

The Secretary argues that the Court lacks subject matter jurisdiction solely on the basis that aspects of Williams's claims exceed the scope of the administrative complaints she presented to the DHS EEO. *See* Mot. at 10–11.

Under Title VII of the Civil Rights Act of 1964, it is unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The statute also prohibits

employers from retaliating against an employee who opposes "an unlawful employment practice" under Title VII. *Id.* § 2000e-3(a). "Designed to eradicate federal employment discrimination," Congress extended these Title VII protections to federal employees in a 1972 amendment, codified at 42 U.S.C. § 2000e-16, and gave a "crucial administrative role [to] each agency together with the [EEOC]."[4] *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 831, 833 (1976).

Before a federal employee may bring a Title VII claim for discrimination or retaliation, the employee must first seek administrative relief within the agency responsible for the alleged discrimination. *Id.* at 835. To do so, the employee must engage in "pre-complaint processing" by contacting an EEO counselor within 45 days of the alleged discrimination. 29 C.F.R. § 1614.105(a)(1). The agency then investigates, and the claimant may later file a formal EEO complaint. *Id.* §§ 1614.105(c), (d). If the matter is not resolved after the agency issues its final decision, the employee may either: (1) file directly in federal court within 90 days, *id.* § 1614.407(a), or (2) appeal through the EEOC within 30 days, *id.* §§ 1614.401(a), 1614.402(a). An employee who elects to pursue further administrative relief is not later precluded from filing in federal court at the conclusion of the EEOC proceedings. *Id.* § 1614.407(c); 42 U.S.C. § 2000e-16(c). If, at any time, the employee's complaint sits idle within the administrative process for more than 180 days, the employee has an immediate right to file a civil action in federal court. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.407(b), (d). This dual remedial scheme, accompanied by the comprehensive EEOC-issued regulations, "provides for a careful blend of administrative and judicial enforcement powers." *Brown*, 425 U.S. at 833.

While the regulations make clear that "the time limits in this part are subject to waiver, estoppel and equitable tolling," 29 C.F.R. § 1614.604(c), the Ninth Circuit had previously held that an employee's "substantial compliance" with the administrative complaint process is a requirement for exhaustion that precludes district court jurisdiction, *see Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001). In June of this year, however, the Supreme Court held

---

[4] In its original form, the amendment delegated full authority for administrative enforcement to the Civil Service Commission. The EEOC assumed this responsibility six years later and retains it today.

9

that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1851 (2019). This Court requested supplemental briefing from the parties as to whether *Fort Bend* forecloses the Secretary's argument that any failure to meet the administrative complaint requirement is a jurisdictional bar supporting a motion under Rule 12(b)(1), and instead requires the Court to consider such arguments under Rule 12(b)(6).

The Secretary contends that this case differs from *Fort Bend* because Williams brings her claims under a provision of the Title VII specific to federal employees that acts as a waiver of the United States' sovereign immunity, and that any preconditions set by that statute should be construed as establishing the contours of that waiver, and thus also of this Court's jurisdiction. Def.'s Supp'l Br. (dkt. 30) (citing *United States v. Dalm*, 494 U.S. 596, 608–10 (1990)). But the Supreme Court has also applied the principle "that procedural rules, including time bars, cabin a court's power only if Congress has 'clearly state[d]' as much"—the same rule applied in *Fort Bend*—to hold that filing deadlines under the Federal Tort Claims Act ("FTCA") are not jurisdictional. *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015) (citation omitted); *see also Fort Bend*, 139 S. Ct. at 1849–50 (citing *Kwai Fun Wong* as among the many cases in which "[t]he Court has characterized as nonjurisdictional an array of mandatory claim-processing rules and other preconditions to relief"). The Court's conclusion was not altered by the fact that the FTCA, like that the provision of Title VII at issue here, operates as a waiver of sovereign immunity. *See Kwai Fun Wong*, 135 S. Ct. at 1636–38 (rejecting an argument that statute of limitations should be construed as a limit on the waiver of sovereign immunity). At least one district court has applied *Fort Bend* to Title VII claims against federal defendants. *Thorne v. Shanahan*, No. 18-cv-2170 (DLF), 2019 WL 3997440, at *3 (D.D.C. Aug. 23, 2019), *appeal docketed*, No. 19-5247 (D.C. Cir. Sept. 24, 2019). This Court holds that the administrative complaint requirement for Title VII claims by federal employees is not jurisdictional, and that *Sommatino*'s holding to the contrary is no longer good law in light of *Fort Bend*. Nevertheless, it remains a "mandatory" "processing rule," *see Fort Bend*, 139 S. Ct. at 1851, and Williams must allege compliance with that requirement (or waiver by the Secretary, which she does not assert) in

order to state a claim on which relief may be granted.

In order to meet the requirement of substantial compliance with administrative exhaustion, the allegations of a plaintiff's judicial complaint must be "like or reasonably related to the allegations" in an administrative complaint submitted to the EEO, such that they would fall within "the scope of an EEOC investigation which [could] reasonably be expected to grow out of the [administrative] charge of discrimination." *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990) (citations, internal quotation marks, and emphasis omitted) (addressing the same standard as applied to a private employee's administrative complaint to the EEOC); *see also Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003) (holding that a court may consider "all claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge."). Courts evaluating the similarity between an administrative complaint and a Title VII claim "may consider 'such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred.'" *Vasquez*, 349 F.3d at 644 (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002)). "In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *B.K.B.*, 276 F.3d at 1100. "Procedural technicalities should not be employed to impede a Title VII claimant from obtaining a judicial hearing on the merits." *Ramirez v. Nat'l Distillers & Chem. Corp.*, 586 F.2d 1315, 1321 (9th Cir. 1978) (citing *Love v. Pullman*, 404 U.S. 522 (1972)).

The Secretary identifies the following allegations as not raised to the EEO: (1) Holsopple and Zeng assigning more difficult and complex work to Williams beginning in January of 2017; (2) Zeng's February 2018 email to Williams about the office dress code; and (3) Zeng notifying Williams in June of 2019 that Williams was being investigated for neglecting her duties and failing to follow instructions. *Id.* at 10.

Williams contends that "the first two events are not alleged in the second amended complaint as adverse actions, but, rather, facts supporting Ms. Williams's claim that DHS harbors

11

1  discriminatory and retaliatory intent against her." Opp'n (dkt. 25) at 17. Williams does not argue that she raised those issues to the EEO. Accordingly, to the extent that Williams's complaint could be construed as raising claims that assigning more difficult work or accusing her of violating the dress code constituted adverse employment actions, the Secretary's motion is GRANTED, and such claims are DISMISSED. The extent to which Williams may introduce those alleged occurrences as evidence of discriminatory intent with respect to other purported adverse action is beyond the scope of the present motion.

As for the June 2019 notification of investigation, the Secretary argues that "none of the agency's EEO investigations could have encompassed this claim because it had not yet occurred by the conclusion of each investigation." Reply (dkt. 28) at 4. The Secretary's implication that all investigations had concluded is in some degree of tension with Williams's allegations, *see* Compl. ¶ 40 ("[F]inal action by [DHS] with respect to the December 17, 2018 EEO complaint has not been taken."), and is not supported by the materials the Secretary submits for judicial notice, *see* Duncan Decl. Ex. G (February 26, 2019 email from an EEO investigator discussing the beginning of her investigation, with no subsequent documents submitted for judicial notice). The parties nevertheless appear to agree that the investigative portion of the EEO investigation had concluded by the time of Zeng's June 2019 comment. *See* Opp'n at 18 (acknowledging that Zeng's "notice of investigation post-dates the EEO investigation").

Ninth Circuit authority appears to be somewhat inconsistent on the question of claims based on similar conduct arising after an investigation concluded. *Compare Vasquez*, 349 F.3d at 645 ("[T]hat event occurred several months after the alleged harassment and even after the EEOC had issued its right-to-sue letter. The EEOC could not have investigated that incident because it had not yet happened at the time the EEOC was conducting its investigation."), *with Sosa*, 920 F.2d at 1456 ("[T]he district court decided that all of Sosa's allegations occurring after the EEOC issued its Reasonable Cause Determination in November 1986 also failed the test. . . . We disagree with the district court.").

In *Sosa*, the Ninth Circuit explicitly held that a claim could proceed based on its relationship to an earlier administrative charge even though "[t]he EEOC could not have

12

investigated the claim . . . because Sosa did not discover the inequality until the same month the EEOC issued its reasonable cause determination." *Sosa*, 920 F.2d at 1457. *Vasquez*, which was not an en banc decision, cannot overrule *Sosa*'s holding that even subsequent incidents that the "EEOC could not have investigated" can be sufficiently related to an earlier administrative complaint to satisfy the exhaustion requirement. Nor is it clear that the *Vasquez* decision purported to do so. Although *Vasquez* noted that the "EEOC could not have investigated that incident because it had not yet happened at the time the EEOC was conducting its investigation," it went on to explain the dissimilarities between the incident and the plaintiff's administrative claim—including differences in legal theories and personnel involved—before concluding that the plaintiff failed to exhaust the claim. *Vasquez*, 349 F.3d at 645. As a decision from the District of Arizona observed, *Vasquez* "did not state a *per se* rule that the conduct that is the basis of a new claim must have occurred before a right-to-sue letter was issued." *Konrath v. Amphitheater Unified Sch. Dist. No. 10*, No. CIV 04-179-TUC-CKJ, 2007 WL 2809026, at *16 (D. Ariz. Sept. 26, 2007).

The Ninth Circuit has also cautioned that where "closely related incidents occur after a charge has been filed, additional investigative and conciliative efforts would be redundant," and "'[t]o require a second "filing" by the aggrieved party . . . would serve no purpose other than the creation of an additional procedural technicality.'" *Brown v. Puget Sound Elec. Apprenticeship & Training Tr.*, 732 F.2d 726, 729–30 (9th Cir. 1984) (quoting *Ramirez*, 586 F.2d at 1320) (ellipsis in original). In *Ramirez*, the plaintiff was laid off for a second time three days before the EEOC issued a right-to-sue letter for an administrative complaint he filed the previous year—much like Williams's case here, the administrative charge was technically still pending at that time although the investigation was presumably complete—and the Ninth Circuit held that the second "layoff constituted a new act of alleged discrimination that was reasonably related to Ramirez's original charge" and fell within the district court's jurisdiction[5] despite his failure to file a second EEOC

---

[5] The Ninth Circuit's framing of this issue as one of jurisdiction in *Ramirez* is no longer correct in light of *Fort Bend*, but the underlying question of whether the claim fell within the scope of the administrative complaint remains substantially the same, even though it is now more properly viewed as an issue of whether a plaintiff states a claim rather than whether a court has jurisdiction.

13

1    complaint. *Ramirez*, 586 F.2d at 1320.

2    Accordingly, despite portions of the *Vasquez* decision that could be read as supporting the
3    Secretary's position, Ninth Circuit precedent provides that even facts occurring after the
4    administrative agency has completed its investigation can fall within the scope of an earlier
5    administrative complaint so long as they are sufficiently similar to the claims raised therein. Here,
6    Williams's administrative complaints alleged that Zeng and Holsopple subjected Williams to a
7    series of purported adverse actions, including criticism of Williams's job performance that she
8    believes was unfounded, based on her race and in retaliation for protected activity. *See, e.g.*,
9    Duncan Decl. Ex. F at 4–5. Contrary to the Secretary's characterization of Williams's
10   administrative claim as "very specific," Reply at 2 (citation omitted), Williams's most recent EEO
11   complaint identified much of the history of her experience with Zeng and Holsopple from early
12   2016 through 2018 as "the action taken against" her, and included history dating back to 2014 as
13   purported "background evidence" of discriminatory treatment. Duncan Decl. Ex. F at 4–5. The
14   new claim that Zeng informed Williams of an investigation regarding her performance is
15   "consistent with the plaintiff's original theory of the case." *B.K.B.*, 276 F.3d at 1100. The
16   Secretary's motion to dismiss that claim for lack of subject matter jurisdiction, construed in light
17   of *Fort Bend* as a motion to dismiss for failure to state a claim, is DENIED.

### C. Remaining Arguments for Failure to State a Claim

19   The Secretary contends that Williams's complaint should be dismissed for failure to state a
20   claim because Williams did not meet with the EEO within forty-five days of all of the incidents at
21   issue, and because Williams has not alleged facts supporting the conclusion that any adverse
22   action was motivated by her race or protected activity.

#### 1. Timeliness of EEO Contact

24   To begin the required administrative process for claims under Title VII and the
25   Rehabilitation Act, a federal employee must initiate contact with an EEO counselor within forty-
26   five days of the date of the alleged discriminatory matter. 29 C.F.R. § 1614.105(a)(1); *Green v.*
27   *Brennan*, 136 S. Ct. 1769, 1775 (2016). "The limitations-period analysis is always conducted
28   claim by claim," and "begins running on any separate underlying claim of discrimination when

that claim accrues." *Green*, 136 S. Ct. at 1782; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–15 (2002) ("Each discriminatory act starts a new clock for filing charges alleging that act."). Although this requirement is not jurisdictional, a federal employee who fails to contact an EEO counselor for pre-complaint processing risks dismissal of any subsequent complaint. *Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009); *Lacayo v. Donahoe*, No. 14-cv-04077-JSC, 2015 WL 993448, at *8 (N.D. Cal. Mar. 4, 2015) ("[A]n employee's failure to follow to a tee the 45-day timing requirements is a shortcoming that relates to the substantive adequacy of a plaintiff's complaint . . . ." (internal brackets, quotation marks, and citations omitted)); *see, e.g.*, *Johnson v. U.S. Treasury Dep't*, 27 F.3d 415, 416 (9th Cir. 1994) (affirming "the judgment against Johnson because his complaint to the EEO counselor was untimely").

In her opposition brief, Williams identifies the following occurrences as adverse actions sufficient to support a claim: (1) the November 2016 performance review; (2) the December 2016 Memorandum of Instruction; (3) the December 2016 Letter of Reprimand; (4) the January 2017 meeting in which Zeng and Holsopple accused Williams of having a long conversation with a coworker; (5) the investigation of alleged misconduct beginning in June of 2019; and (6) the ongoing denial of a promotion. Opp'n at 19. Likely because Williams filed her first EEO complaint within forty-five days after the earliest of those instances, the Secretary does not challenge any of those as not timely raised. *See* Mot. at 12 (arguing only that claims based on allegations occurring "between December 2014 and September 2016" are subject to dismissal on this basis).

Williams states that she included earlier incidents—including the denials of training opportunities and temporary duty assignments—only as background information relevant to understanding her later treatment. Opp'n at 19. To the extent her complaint could be construed as bringing claims based on discrete adverse actions occurring in September of 2016 or earlier, the Secretary's motion is GRANTED, and such claims are DISMISSED without prejudice.

Williams also contends that the failure to promote her to GS-12 can be construed as a continuing violation. Opp'n at 20–21. The Secretary relies on a decision from this district for the

15

proposition that "[t]he 'continuing violations doctrine' does 'not [apply] to claims of discrimination or retaliation," unlike claims based on a hostile work environment, because "'[d]iscriminatory or retaliatory acts under Title VII are 'discrete acts' that start a new clock for filing administrative charges alleging that act.'" Mot. at 12 (quoting *Anderson v. City & Cty. of San Francisco*, 169 F. Supp. 3d 995, 1012 (N.D. Cal. 2016)). *Anderson* in turn relied on the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). *See Anderson*, 169 F. Supp. 3d at 1012 (citing *Morgan*, 536 U.S. at 113–14). In *Morgan*, the Supreme Court held that hostile work environment claims may be treated as continuing violations encompassing conduct outside the statute of limitations, but that "a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period." *See Morgan*, 536 U.S. at 122. While Morgan did not explicitly address whether *all* claims for discrimination or retaliation necessarily arise from "discrete . . . acts," it left at most a narrow window for discriminatory or retaliatory conduct to constitute a continuing violation. *See, e.g.*, *id.* at 111–12 (discussing precedent treating an ongoing failure to pay equal wages to employees of different races as a series of discrete acts occurring at the time of each paycheck); *id.* at 114 (listing "failure to promote" among examples of "[d]iscrete acts").

      In a case decided two decades before *Morgan*, the Ninth Circuit held that the continuous violation doctrine can apply to "a systematic policy of discrimination," such as "a continuing policy against promotion of minorities," and that a claim based on such a policy could proceed "even if some or all of the events evidencing its inception occurred prior to the limitations period." *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982). District courts within the Ninth Circuit continue to rely on *Williams*. *E.g.*, *Dornell v. City of San Mateo*, 19 F. Supp. 3d 900, 906 (N.D. Cal. 2013). A more recent Ninth Circuit decision held that *Morgan* "substantially limited the notion of continuing violations," that a "pattern-or-practice claim[] cannot be based on 'sporadic discriminatory acts' but rather must be based on discriminatory conduct that is widespread throughout a company or that is a routine and regular part of the workplace," and that an "allegation that . . . discrete acts were undertaken pursuant to a discriminatory policy does not extend the statutory limitations period." *Cherosky v. Henderson*, 330 F.3d 1243, 1246–47 (9th

16

Cir. 2003) (citation omitted). Since then, the Ninth Circuit has addressed apparent tension between *Cherosky* and earlier precedent by holding that "the two lines of authority identify different circumstances that lead to different accrual dates for claims": while a "separate, discrete act" begins a new statute of limitations, a "mere effect of" an earlier discriminatory action does not. *See Pouncil v. Tilton*, 704 F.3d 568, 581 (9th Cir. 2012).

Williams has not alleged facts supporting the sort of pervasive-throughout-the-workplace policy that might support a pattern or practice claim under *Cherosky*. She has, however, alleged that her supervisors declined to promote at a particular time, i.e., when Owens announced on November 6, 2018 that DHS would not make GS-12 positions available in San Francisco after allegedly earlier indicating that it would do so. SAC ¶ 30. Regardless of the merits of this claim, it is based on the sort of discrete act that gives rise to its own limitations period, and the Secretary does not dispute that Williams engaged with the EEO within the forty-five-day limitations period after the announcement was made. *See id.* ¶ 40 (alleging contact with an EEO counselor on November 16, 2018). The Court declines to dismiss as untimely Williams's claim based on that decision.

Williams may not present the series of interactions she had with her supervisors as a continuing violation based on a theory of discrimination or retaliation. Williams may, however, present past conduct that was not timely presented to the EEO "as background evidence in support of a timely claim," *Morgan*, 536 U.S. at 113, and may seek leave to amend her complaint to add a hostile work environment claim if she believes she can allege facts to support such a claim.

### 2. Lack of Open Position for Promotion

The parties' dispute whether Williams's claim based on not being promoted to salary grade GS-12 may proceed despite the lack of any allegation that an open position was available. The Secretary relies on two out-of-circuit district court decisions that held that plaintiffs' failure to apply to existing open positions was fatal to their claims. *See* Mot. at 14; *Oyola-Nunez v. Miranda-Marin*, No. CIV. 08-2149 (JAF), 2009 WL 1299561, at *4 (D.P.R. May 5, 2009); *Bernstein v. The MONY Grp., Inc.*, 228 F. Supp. 2d 415, 419 (S.D.N.Y. 2002) (citing *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998)). *Oyola-Nunez* concerned a claim for failure

17

to hire, rather than a failure to promote, 2009 WL 1299561, at *3–4, and the plaintiff in *Bernstein* based her claim on her employer's failure to create "a new position in recruiting and marketing," distinct from her existing job responsibilities. *See* 228 F. Supp. 2d at 419. Additional district court decisions cited in the Secretary's arguments regarding retaliation similarly concern plaintiffs who sought the creation of "an entirely new position." *McQuilkin v. Del. River Port Auth.*, No. CIV. 11-652 JBS/AMD, 2013 WL 5936983, at *14 (D.N.J. Nov. 6, 2013) (citation omitted) (considering a motion for summary judgment on a claim under the Americans with Disabilities Act); *see also Hamilton v. St. Joseph's Med. Ctr.*, No. CIV. S-12-2817 KJM, 2014 WL 2624976, at *6 (E.D. Cal. June 12, 2014) (holding on summary judgment that a plaintiff could not prevail where "there was no current posting for the job plaintiff wanted"). None of those cases are clearly analogous to Williams's allegations here, which at least support an inference that a promotion from a GS-11 paralegal position to a GS-12 paralegal position would typically involve an incremental increase in salary and responsibility rather than entirely separate job duties for which her employer might have no need.

The cases on which Williams relies are also not directly on point. In a 1984 decision, the Supreme Court held that that a lawyer could base a Title VII claim on her law firm's failure to select her for partnership despite when the law firm "represented that advancement to partnership after five or six years was 'a matter of course' for associates 'who receive[d] satisfactory evaluations.'" *Hishon v. King & Spalding*, 467 U.S. 69, 71–79 (1984) (alteration in original). The Seventh Circuit has also recognized that a plaintiff need not have applied for a particular position if her "employer does not solicit and await applications but hands out promotions on its own initiative in a nonselective, serial fashion" and "the plaintiff alleges that the employer's decision not to approach people of her status was itself illegitimately motivated and shows that but for such a practice she likely would have been approached." *Loyd v. Phillips Bros.*, 25 F.3d 518, 523 (7th Cir. 1994). Unlike those circumstances, there is no dispute here that the allocation of and promotion to GS-12 positions is governed by a regulatory and bureaucratic structure, rather than simply being made available "as a matter of course," *cf. Hishon*, 467 U.S. at 72, or "in a nonselective, serial fashion, *cf. Loyd*, 25 F.3d at 523.

Williams's allegation that Holsopple was able to successfully request new GS-12 positions and other positions in the past, SAC ¶ 35, provides some support for a claim that she was subject to adverse action when he did not obtain such a position for her. Nevertheless, some gaps remain. For one thing, the complaint does not indicate whether Holsopple requested such positions based on the needs of the office, which would be more similar to the cases holding that employers need not create "entirely new positions" to accommodate an employee's desired roles, or based on his view that employees had reached a point in their careers where they deserved greater compensation and responsibility, which might be more similar to the promotions made available as a matter of course in *Hishon* and *Loyd*. For another, Williams's complaint does not indicate whether Holsopple's requests for such positions were typically granted, and includes no allegation that Holsopple failed to request a position for her. Williams's claims based on failure to promote are DISMISSED with leave to amend.

### 3. Causal Connection to Race or Protected Activity

The Secretary argues that Williams has not plausibly alleged that any adverse action was based on her race or on retaliation for protected activity.

Williams can state a circumstantial case that adverse action based on a protected class by showing (1) she is a member of a protected class; (2) she was qualified for her position and performed adequately; (3) she experienced adverse employment action; and (4) similarly situated individuals not in her protected class were treated more favorably, or other circumstances give rise to an inference of discrimination. *See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010). Although a plaintiff does not necessarily need to plead each of these elements specifically in her complaint, they nevertheless "help to determine whether [she] has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *Jianjun Xie v. Oakland Unified Sch. Dist.*, No. C 12-2950 CRB, 2013 WL 812425, at *4 n.3 (N.D. Cal. Mar. 5, 2013) (examining relevant authority); *see also Twombly*, 550 U.S. at 562 (quoting with approval the Seventh Circuit's holding that a complaint "'must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory'").

19

Williams contends that she meets that standard with respect to race discrimination because she alleges that other paralegals who are not African American received opportunities for training and temporary duty, more favorable work assignments, and in at least one case a promotion. *See* Opp'n at 24 (citing SAC ¶¶ 9, 15, 24, 35, 37). Whether those allegations are sufficient is a close call. For the most part, however, Williams's complaint does not address whether the other employees were similarly situated in any way other than job description—for example, Williams largely does not address whether other employees' job performance or seniority were comparable to her own. Williams also does not address whether other paralegals were reprimanded for purported violations of workplace rules. Although the Court GRANTS the Secretary's motion on that basis, Williams's current allegations would not require extensive amendment to meet that standard, and the Court grants her leave to do so.

With respect to retaliation, some degree of animus can reasonably be inferred from Williams's allegation that Zeng told another paralegal that she would never support Williams for promotion as a result of Williams's grievance against Zeng. Williams has not alleged, however, that Zeng had any role in whether she would be promoted, particularly in the absence of any available GS-12 paralegal position. Nor has Williams included any allegations suggesting that Zeng's various reprimands were pretextual and in fact based on race or retaliation rather than legitimate disagreement regarding job performance or workplace standards—as the Secretary notes, for example, there is no allegation as to whether the other employee accused of engaging in lengthy non-work-related conversations was similarly disciplined. Williams's retaliation claim is therefore also DISMISSED with leave to amend.

## IV. CONCLUSION

For the reasons discussed above, the Secretary's motion under Rule 12(b)(6) is GRANTED, and Williams's second amended complaint is DISMISSED with leave to amend. Williams may file a third amended complaint no later than December 16, 2019.

**IT IS SO ORDERED.**

Dated: November 25, 2019

_____
JOSEPH C. SPERO
Chief Magistrate Judge