UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I. CAROL WILLIAMS,<br><br>    Plaintiff,<br><br>    v.<br><br>CHAD WOLF,<br><br>    Defendant. | Case No. 19-cv-00652-JCS<br><br>**ORDER DENYING MOTION TO DISMISS FIFTH AMENDED COMPLAINT**<br><br>Re: Dkt. No. 48 |

## I.   INTRODUCTION

Plaintiff I. Carol Williams, who works as a paralegal for the Department of Homeland Security ("DHS"), asserts claims for racial discrimination and retaliation against Defendant Chad Wolf, Acting Secretary of Homeland Security (the "Secretary"). The Court previously granted in whole or in part two motions by the Secretary to dismiss Williams's claims with leave to amend. Williams amended her claim twice more since the Court's most recent order, and the Secretary moves once again to dismiss Williams's claims to the extent they are based on the Secretary's failure to promote her. The Court finds the matter suitable for resolution without oral argument and VACATES the hearing previously set for May 29, 2020 at 9:30 AM. The case management conference set for the same time is CONTINUED to May 29, 2020 at 2:00 PM, and the parties will separately receive instructions for remote participation. For the reasons discussed below, the Secretary's motion is DENIED.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Procedural History and Previous Orders

Williams works as a paralegal specialist at the GS-11 salary grade for DHS at the U.S. Customs and Border Protection ("CBP") Fines, Penalties, and Forfeitures Office in San Francisco. This case is based on Williams's allegations that she was subjected to pretextual discipline, given negative performance reviews, and deprived of opportunities for professional advancement on account of her African American race and in retaliation for her past efforts to raise such concerns.

Williams filed a grievance in June of 2015 and filed a complaint with the Office of Inspector General in September of 2016. 5th Am. Compl. ("5AC," dkt. 46) ¶¶ 12, 18. She contacted an Equal Employment Opportunity ("EEO") counselor on January 2, 2017 filed a formal EEO complaint on April 5, 2017. *Id.* ¶ 58.[2] Williams received a final decision on June 9, 2018 and filed an appeal to the Equal Employment Opportunity Commission ("EEOC") on June 22, 2018, but more than 180 days passed and she has not received a decision. *Id.* Williams again contacted an EEO counselor on April 20, 2018 and filed a second complaint on May 30, 2018, for which she received a final decision on November 21, 2018. *Id.* ¶ 59. Williams contacted an EEO counselor for a third time on November 16, 2018 and filed a third EEO complaint on December 17, 2018. *Id.* ¶ 60.

Williams filed this action on February 6, 2019. *See generally* Compl. (dkt. 1). She amended her complaint once before the Secretary was served, and a second time pursuant to a stipulation between the parties. *See generally* 1st Am. Compl. (dkt. 5); 2d Am. Compl. (dkt. 18).

On November 25, 2019, the Court granted the Secretary's motion to dismiss Williams's second amended complaint, but granted leave to amend. *See generally* Order re Mot. to Dismiss 2d Am. Compl. ("Order re SAC," dkt. 33).[3] The Court dismissed Williams's claims to the extent

---

[2] Williams's present complaint, like the third amended complaint addressed in the Court's previous order, states that she filed the EEO complaint on "April 5, 2016." 5AC ¶ 58. Given the overall timeline of events, however, and the fact the EEO complaint allegedly pertained in part to conduct occurring in December of 2016 and January of 2017, it remains clear in context that the year "2016" is a typographical error intended as "2017." *See id.*

[3] *Williams v. Wolf*, No. 19-cv-00652-JCS, 2019 WL 6311381 (N.D. Cal. Nov. 25, 2019). Citations herein to the Court's previous orders refer to page numbers of the versions filed in the Court's ECF docket.

2

that they could be construed as encompassing her supervisors assigning her more difficult work beginning in January of 2017 and a 2018 email from a supervisor asserting that Williams violated the office dress code—an interpretation that Williams disavowed—because Williams did not exhaust any such claims by raising them with the EEO. *Id.* at 11–12. The Court concluded that Williams had sufficiently exhausted claims based on a June 2019 notification from supervisors that William was the subject of an investigation for poor work performance, holding that such claims were sufficiently similar to the subject matter of Williams's EEO complaints even though the conduct at issue occurred after Williams's contact with the EEO. *Id.* at 12–14.

The Court dismissed Williams's claims to the extent they could be construed as based on conduct occurring before November of 2016—again, an interpretation that Williams disavowed, arguing that she alleged such conduct only as background—for failure to timely complain to the EEO about such conduct. *Id.* at 14–15. The Court also declined to apply a "continuing violation" theory to the Secretary's failure to promote Williams, but held that she sufficiently alleged that certain purported failures to promote her fell within the statute of limitations, and granted Williams leave to amend to add a hostile work environment claim if she believed she could allege sufficient facts to do so. *Id.* at 15–17.

To the extent Williams based her claims on failure to promote her to the GS-12 salary grade, the Court dismissed them for failure to allege that an open position was available. *Id.* at 17–19. The Court granted leave to amend those claims if Williams could allege that the promotions in her office were made available in manner similar to cases recognizing that an open position need not be available to support a claim where "promotions [were] made available as a matter of course." *Id.* at 19 (citing *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Loyd v. Phillips Bros.*, 25 F.3d 518, 523 (7th Cir. 1994)). The Court also granted the Secretary's motion to dismiss all of Williams's claims for failure to allege a plausible causal connection to race or retaliation, but noted that "Williams's current allegations would not require extensive amendment to meet that standard." *Id.* at 19–20.

Williams filed her third amended complaint on December 12, 2019, and the Secretary again moved to dismiss. The Court addressed Williams's failure-to-promote theory as follows:

3

As discussed in the Court's previous order, a number of district courts have held that an employee cannot bring a discrimination claim based on an employer's failure to create a "new position" for that employee. Order Re MTD SAC at 17–18 (citing *Hamilton v. St. Joseph's Med. Ctr.*, No. CIV. S-12-2817 KJM, 2014 WL 2624976, at *6 (E.D. Cal. June 12, 2014); *McQuilkin v. Del. River Port Auth.*, No. CIV. 11-652 JBS/AMD, 2013 WL 5936983, at *14 (D.N.J. Nov. 6, 2013); *Oyola-Nunez v. Miranda-Marin*, No. CIV. 08-2149 (JAF), 2009 WL 1299561, at *4 (D.P.R. May 5, 2009); *Bernstein v. The MONY Grp., Inc.*, 228 F. Supp. 2d 415, 419 (S.D.N.Y. 2002)). Comparing those cases to other decisions allowing claims where employers typically promoted employees "as a matter of course" but failed to do so for the plaintiffs, the Court noted that Williams's second amended complaint "d[id] not indicate whether Holsopple requested [new GS-12] positions based on the needs of the office, which would be more similar to the cases holding that employers need not create 'entirely new positions' to accommodate an employee's desired roles, or based on his view that employees had reached a point in their careers where they deserved greater compensation and responsibility, which might be more similar to the promotions made available as a matter of course." *Id.* at 18–19 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 71–79 (1984); *Lloyd v. Phillips Bros.*, 25 F.3d 518, 523 (7th Cir. 1994)). The Court dismissed with leave to amend Williams's claims based on failure to promote.

Williams does not dispute as a matter of law that an employer need not create an entirely new position for an employee if the employer has no need for that position. Nor does she square her new allegation that Holsopple requested new positions "based on the needs of the office," *see* [Third Am. Compl. ("TAC," dkt. 34)] ¶ 41, with the Court's previous holding that such a practice would fall within the realm of creating new positions rather than promotion as a matter of course. . . . There is no allegation that any GS-12 "Paralegal Specialist (Legal Expert)" positions—the position that Williams now claims she should have received—were available or created in the San Francisco office during the period at issue, that Williams ever applied for a vacant position, or that the office had a need for such a position. If, as alleged, DHS typically created new positions based on office needs and Williams's office neither had a vacant GS-12 "Paralegal Specialist (Legal Expert)" position nor needed to add such a position, then as a matter of law, failure to offer such a position to Williams was neither discriminatory nor retaliatory.

The closest that Williams comes to suggesting that such a position was available or needed is her allegation that Timothy Smith was hired as a GS-12 "Supervisory Paralegal Specialist" in February of 2019. *See* TAC ¶ 45. That is a different title than Williams alleges she sought, however, and Williams does not allege that she pursued or was qualified the "supervisory" position offered to Smith. Williams also does not allege that Smith received the role through anything other than a competitive application process. To the contrary, her allegation that two employees, whose previous roles in other departments became obsolete, received "case assistant" positions without "go[ing] through the competitive process of applying and interviewing for their positions"—presented in a

4

> paragraph describing the hiring or promotion of a number of other employees, including Smith, with no suggestion that other employees received similar treatment—tends to suggest that the other employees, including Smith, applied and interviewed for the positions they received. *See id.* ¶ 41. There is no indication in the complaint that Williams applied for the position ultimately offered to Smith, and at the hearing, Williams's counsel stated that he was not aware of her having done so.
>
> Based on Williams's allegation that new GS-12 "Paralegal Specialist (Legal Expert)" positions were created based on the needs of the office rather than as a matter of course for experienced GS-11 paralegal specialists, and her failure to allege that any such position was available during the period at issue, Williams's claims are DISMISSED to the extent they are based on failure to promote. Although there appears to have been some confusion and conflicting information as to whether new GS-12 paralegal specialist positions would be authorized for the San Francisco office, there is no indication that the ultimate decision by DHS officials in Washington to authorize those positions for different offices instead of San Francisco was motivated by Williams's race or protected activity. It remains conceivable that Williams could amend to cure this defect, and the Court grants her leave to do so.

Order re Mot. to Dismiss 3d Am. Compl. ("Order re TAC," dkt. 43)[4] at 13–14 (some alterations in original).

The Court held that Williams's allegations were sufficient with respect to other adverse actions—specifically, "'(1) unprecedented negative performance review on November 25, 2016; (2) Memorandum of Instruction on December 7, 2016; (3) Letter of Reprimand on December 22, 2016; (4) accusation of alleged misconduct on January 24, 2017; (5) investigation of alleged misconduct starting on June 13, 2019; and (6) denial of promotion on November 6, 2018'"—in part based on Ninth Circuit precedent that a plaintiff need not satisfy at the pleadings stage the elements of a prima facie case under the *McDonnell Douglas* burden-shifting framework. *Id.* at 15–17 (quoting TAC ¶¶ 60, 62).

Williams filed a fourth amended complaint (dkt. 44) to pursue her failure-to-promote claim as allowed by the Court's order, and filed her operative fifth amended complaint pursuant to a stipulation of the parties. The Secretary now moves once again to dismiss Williams's claims based on failure to promote.

---

[4] *Williams v. Wolf*, No. 19-cv-00652-JCS, 2020 WL 1245369 (N.D. Cal. Mar. 16, 2020).

5

**B.     Relevant Allegations of the Fifth Amended Complaint**

Because a plaintiff's factual allegations are generally taken as true in resolving a motion to dismiss, this background sections summarizes the allegations of Williams's complaint as if true. Nothing in this section should be interpreted as resolving any issue of fact that might be disputed at a later stage of the case. This section also focuses on the allegations relevant to the failure-to-promote theory at issue in the present motion, and is not intended as a comprehensive summary of Williams's complaint.

Williams, who is African American, began working for CBP in the Fines, Penalties, and Forfeitures Office as a GS-11 paralegal specialist in January of 2012. 5AC ¶¶ 6–7. She has satisfactorily performed her duties and, before the events at issue, received consistently positive performance reviews. *Id.* ¶ 8. Williams is the only African American paralegal specialist in the office, and the only paralegal specialist who has complained about discrimination, harassment, or retaliation. *Id.* ¶ 41. As discussed in the Court's previous order, Williams sufficiently alleges that her supervisors Russell Holsopple and Debra Zeng took various adverse actions against Williams based on her race and protected activity. *See* Order re TAC at 15–17. The Court therefore assumes for the purpose of the present motion that Williams's allegations are sufficient to allege a discriminatory or retaliatory basis for any failure to promote, if she sufficiently alleges such failure.

Williams alleges that promotions to higher salary grades occurred in two ways in her office. In the first method, "Holsopple identifies a need for the office, after consultation and input from Ms. Zeng, and then approaches management and requests promotion(s)/position(s) within the office," with those requests routinely being granted. 5AC ¶ 11. In the second method, the office "advance[es] employees by grade level, e.g., GS-11 to GS-12," without requiring "the creation of a new position nor any posting soliciting applications for the position," instead keeping the employees in their existing positions but granting them increases in grade and salary. *Id.* ¶ 15.

In December of 2015, Zeng told Williams's coworker Xenia Mannone that Zeng would never support a paralegal specialist who had filed a grievance against Zeng—i.e., Williams—for advancement to the GS-12 salary grade. *Id.* ¶ 14. Also in December of 2015, Williams began to

6

request a grade promotion to GS-12 based on the complexity of the work she was performing, or consideration for any open GS-12 positions. *Id.* ¶ 16. Beginning in January of 2017, Holsopple and Zeng have assigned Williams a heavier and more complex caseload than any of her GS-11 colleagues, and the difficulty of her work has equaled or exceeded that of a GS-12 paralegal specialist with whom she worked. *Id.* ¶ 26.

In the summer of 2017, senior CBP official Brian Humphrey "stated that there would be grade promotions (upgrades) to GS-12 Expert Paralegal Specialist" for some GS-11 paralegal specialists in Williams's office, based on "an acknowledgment of an increase in level of complexity of cases and caseloads that were being processed by GS-11 Paralegal Specialists." *Id.* ¶ 27. Holsopple began meeting regularly with Williams in November of 2017, purportedly for the purpose of mentoring her for promotion. *Id.* ¶ 28. He also repeatedly stated in staff meetings "that there would be GS-12 positions for grade promotions" in the San Francisco office. *Id.* ¶ 32. In March of 2018, another senior CBP official, Todd Owen, visited the San Francisco office and "stated that he was assembling a team to look at the difficulty and level of work being performed by GS-11 Paralegal Specialists to determine on a nationwide basis which offices would receive upgrades (grade promotions) for GS-11 Paralegal Specialists to GS-12 Paralegal Specialist positions." *Id.* ¶ 31. Based on that visit, the announcement in 2017, and Holsopple's mentoring and statements, "Williams was led to believe that grade promotions to GS-12 Paralegal Specialist positions would be made available for the San Francisco Office." *Id.*

On April 20, 2018, Williams contacted an EEO counselor and "raised the issues of race discrimination and retaliation with respect to being denied a promotion to a GS-12 Paralegal Specialist position and the ability to be promoted to an attorney position as [a] continuing violation since December 14, 2015." *Id.* ¶ 59. She filed a formal complaint—her second, but the first to raise failure-to-promote claims—on May 30, 2018, and received a final decision on November 21, 2018. *Id.*

On November 6, 2018, Owen announced new GS-12 paralegal positions in eight offices, but none in San Francisco. *Id.* ¶ 33. According to Williams:

> The reason for the grade promotions was the Workgroup formed to look at the difficulty and level of work being performed by GS-11 Paralegal Specialists as described in paragraph 31 determined that there was an increase in level of complexity of cases that were being processed by GS-11 Paralegal Specialists. This announcement did not increase the overall number of Paralegal Specialists (220), only that 12 would be upgraded from GS-11 to GS-12. Although the announcement indicated that the eight Field Offices would issue competitive promotion vacancy announcements to fill the GS-12 upgrades, Ms. Williams never received any competitive promotion vacancy announcements for any of the eight Field Offices. Ms. Williams previously regularly received announcements or emails from Mr. Holsopple and other sources about promotion opportunities and position vacancies.

*Id.* Williams met with Holsopple two days later to discuss the fact that no GS-12 positions were created in San Francisco, to request that she be considered for such a position, and to express her desire to make her concerns known to Owen and Humphrey. *Id.* ¶ 34. Holsopple told Williams that Humphrey had the authority to create new positions. *Id.* "Williams memorialized the meeting in an email she sent that day," apparently to members of the "Executive Commission," and Holsopple disciplined her for doing so. *Id.* ¶¶ 34–35.

On November 16, 2018, Williams contacted an EEO counselor for the third time and raised issues including "being denied a promotion to a GS-12 Paralegal Specialist position on November 6, 2018 and as a continuing violation since December 14, 2015." *Id.* ¶ 60. She filed a formal complaint on December 17, 2018, and more than 180 days have elapsed since then without DHS reaching a final decision. *Id.* Williams filed this civil action in February of 2019. *See id.*

Williams filed this action on February 6, 2019. The same day, "Holsopple announced the hiring of Timothy Smith, who is white and has not complained of discrimination, harassment, or retaliation, as a GS-12 Supervisory Paralegal Specialist." *Id.* ¶ 46. Smith lacked experience or training as a paralegal and had previously had his supervisory responsibilities revoked in a different GS-12 position after an employee filed a sexual harassment complaint against him. *Id.* Smith had also previously been investigated "for allegedly threatening to shoot a supervisor and several co-workers in the heads." *Id.* ¶ 53. Holsopple nevertheless requested the GS-12 Supervisory Paralegal Specialist position, hired Smith, and "immediately began 'on-the-job' training." *Id.* ¶ 46. At oral argument on the Secretary's previous motion to dismiss, Williams's attorney did not know whether Smith received his position through something other than a

competitive application process, or whether Williams pursued or was qualified for that position. *See* Order re TAC at 14. Williams has not added new allegations in her fifth amended complaint regarding Smith's "Supervisory Paralegal Specialist" position.

On March 6, 2019, Owen visited the San Francisco office again and announced that "the same Workgroup assembled in 2018 as described in paragraph 31 would be assembled again to look at the work of Paralegal Specialists and would reconsider additional upgrades (grade promotions) of GS-11 Paralegal Specialists to GS-12 Paralegal Specialist positions for Fines, Penalties and Forfeitures Offices nationwide." 5AC ¶ 36.

Williams remained a GS-11 paralegal specialist until December of 2019, when all GS-11 paralegal specialists in all Fines, Penalties and Forfeitures office nationwide were upgraded to GS-12 without needing to apply or compete for new positions, as part of a shift announced in November of 2019 based on "recognition of the enhanced complexity of duties performed." *Id.* ¶¶ 40, 49.[5] According to Williams, the "Department announced a grade promotion for Ms. Williams in November 2019 as part of nationwide upgrades in an attempt to hide its discriminatory and retaliatory failure to upgrade Ms. Williams in November 2018." *Id.* ¶ 54. Her job performance has met or exceeded that of all of the other paralegal specialists in her office—none of whom are African American or have complained of discrimination or retaliation. *Id.* ¶ 41. Williams is the only paralegal specialist in the San Francisco office who is a licensed attorney, *id.* ¶ 50, and holding a GS-12 position is a prerequisite for promotion to many GS-13 attorney positions at the Department of Homeland Security, *id.* ¶ 43. From the time she was hired until her 2019 promotion as part of the reclassification of all GS-11 paralegal specialists, Williams and one other employee who did not seek promotion were the only employees in Williams's office who were not promoted. *Id.* ¶ 45.

Williams's complaint includes the following additional allegations regarding promotion:

> Mr. Holsopple has requested and received approval for a number of positions in the Fines, Penalties and Forfeitures Office based on the

---

[5] At the same time that it upgraded paralegal specialists from GS-11 to GS-12, the Office of Field Operations also upgraded all "First Line Supervisory Paralegal Specialist positions" from GS-12 to GS-13. *Id.* ¶ 53.

9

> needs of the office. For example, Mr. Holsopple requested and received approval to create the following: (1) a GS-12 "Legal Expert" (Paralegal Specialist) position in or about 2014 or 2015 that was given to Mr. To; (2) a GS-12 supervisor position in 2017 that was given to Maria Gastellum, who is Mexican American; (3) a GS-12 supervisory position in February 2019 that was given to Timothy Smith, who is white; (4) two GS-11 Paralegal Specialist positions, one in June 2015 that was given to Lori Whipple, who is white, and one in November 2018 that was given to Theresa Benitez, who is Filipina American; (5) a GS-9 Paralegal Specialist position in or about January 2019 that was given to Kim Urban, who is white (and after one year, will be promoted to a GS-11 and will be eligible for a GS-12 Paralegal Specialist in or about 2021) following an agreement she entered into with Upper Management after she was terminated from her job as a U.S. Customs and Border Protection Officer at the San Francisco International Airport and offered an opportunity to apply to the Fines, Penalties and Forfeitures department as a GS-9 Paralegal Specialist; and (6) two case assistant positions in or about 2016 and 2018 that were given to Kathleen Malolot and Josie Callejo, respectively, both of whom are Filipina Americans and did not go through the competitive process of applying and interviewing for their positions but were "placed" in the office because their positions in their prior departments became obsolete. But Mr. Holsopple did not request a GS-12 position upgrade (grade promotion) for Ms. Williams in advance of the November 6, 2018 announcement that such upgrades would not be made available in San Francisco despite her stated interest and Mr. Holsopple's advance knowledge of GS-12 position upgrade being announced in 2017. After two years (November 2017 to December 2019) of "mentoring" Ms. Williams, the promised GS-12 Paralegal Specialist position upgrade was not made available in San Francisco in part because Mr. Holsopple intentionally failed to request it for Ms. Williams.

*Id.* at 42. Williams alleges that Zeng was promoted to a more senior position in 2019, and that, both before and after that promotion, she had authority to recommend promotions and could have secured a GS-12 position for Williams in 2018. *Id.* ¶ 43.

Williams has sought other employment with the federal government since 2016 in order to escape the alleged harassment and retaliation by Holsopple and Zeng, but alleges that she has been unsuccessful because of the disciplinary letters in her file and because the supervisors she must list as references are biased against her. *Id.* ¶ 52. Other employees from her office have obtained higher-paid positions at different federal government offices during the time period at issue. *Id.*

Williams brings two claims under Title VII of the Civil Rights Act of 1964, alleging retaliation and discrimination on the basis of race. *See id.* ¶¶ 59–62.

### III. ANALYSIS

#### A. Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

#### B. Administrative Exhaustion

The Secretary argues that Williams cannot now proceed on a theory that her supervisors

11

had discretion to upgrade her from GS-11 to GS-12 as a "noncompetitive 'grade promotion[],'" and that the promotions for twelve paralegal specialists in different offices in 2018 were such noncompetitive upgrades, because Williams did not disclose that theory in her administrative EEO complaint. Mot. (dkt. 48) at 5–6.

As discussed in this Court's order dismissing Williams's second amended complaint, *see* Order re SAC at 11, in order to meet the requirement of substantial compliance with administrative exhaustion, the allegations of a plaintiff's judicial complaint must be "like or reasonably related to the allegations" in an administrative complaint submitted to the EEO, such that they would fall within "the scope of an EEOC investigation which [could] reasonably be expected to grow out of the [administrative] charge of discrimination." *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990) (citations, internal quotation marks, and emphasis omitted) (addressing the same standard as applied to a private employee's administrative complaint to the EEOC); *see also Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003) (holding that a court may consider "all claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge"). Courts evaluating the similarity between an administrative complaint and a Title VII claim "may consider 'such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred.'" *Vasquez*, 349 F.3d at 644 (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002)). "In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *B.K.B.*, 276 F.3d at 1100. "Procedural technicalities should not be employed to impede a Title VII claimant from obtaining a judicial hearing on the merits." *Ramirez v. Nat'l Distillers & Chem. Corp.*, 586 F.2d 1315, 1321 (9th Cir. 1978) (citing *Love v. Pullman*, 404 U.S. 522 (1972)).

Williams's December 2018 EEO complaint identified "Denial of promotion to GS-12" as an action she believed to be discriminatory, described the chain of events alleged in her complaint regarding the announcement of new positions and those positions materializing in offices other

12

than San Francisco, and alleged that Holsopple "created and requested a number of positions" for employees in the San Francisco office other than Williams. *See* Duncan Decl. (dkt. 22-2) Ex. F.[6] The Secretary cites no case dismissing a Title VII claim for lack of administrative exhaustion based on the plaintiff's failure to specify the particular method by which other employees were promoted.[7] It is reasonable to expect that "the scope of an . . . investigation which [could] reasonably be expected to grow out of [Williams's] charge of discrimination," *Sosa*, 920 F.2d at 1456, would have included the nature of positions Williams claimed should have been created in San Francisco, the nature of the promotions of other employees in her office, and, ultimately, whether Williams was denied a promotion to GS-12 based on her race or protected activity. This is not to suggest, of course, that the EEO should have reached any particular conclusion on the *merits* of Williams's claim—for administrative exhaustion purposes, it is enough that an investigation of the administrative complaint could reasonably be expected to encompass the facts now alleged. To hold otherwise would contravene the Ninth Circuit's instruction that administrative exhaustion should not turn on "[p]rocedural technicalities." *See Ramirez*, 586 F.2d at 1321. The motion to dismiss on this basis is DENIED.

### C. Plausible Allegations of Failure to Promote

As discussed in this Court's two previous orders, courts have generally held that an employee cannot bring a Title VII claim based on an employer's failure to create a "new position" for that employee or to give an employee a position for which the employee did not apply, but that an employee can bring such a claim where an employer had a practice of promoting employees in a nonselective fashion as a matter of course. *See* Order re SAC at 17–19; Order re TAC at 13–14..

The Secretary argues that Williams has not plausibly alleged a viable claim for failure to

---

[6] The Court considers the administrative complaint in the context of the present motion under Rule 12(b)(6) on the basis that it is incorporated by reference by Williams's fifth amended complaint.
[7] The Secretary's motion cites no case law whatsoever to support this argument. Mot. at 9–10. Of the two cases cited in this section of the Secretary's reply, one held that an administrative complaint limited to conditions while the plaintiff was working for the defendant did not encompass allegedly discriminatory conduct in denying leave and benefits after she ceased working, *Green v. L.A. Cty. Superintendent of Sch.*, 883 F.2d 1472 (9th Cir. 989), and the other held that the defendant had waived its right to assert a lack of administrative exhaustion, without reaching the nature of the plaintiff's administrative claim, *Davis v. Fort Bend Cty.*, 893 F.3d 300 (5th Cir. 2018), *aff'd*, 139 S. Ct. 1843 (2019). *See* Reply (dkt. 57) at 3–4.

promote because it is implausible that Williams's supervisors had discretion to upgrade her to GS-12 without a competitive application process as required by federal regulations, Mot. at 10–11, and because she has not alleged either that there was a need for additional GS-12 paralegal specialists in the San Francisco office or that such promotions were made "as a matter of course," *id.* at 11–13.

The Secretary is correct that 5 C.F.R. § 335.103—which Williams does not address in her opposition brief, despite the Secretary's motion citing it repeatedly—provides that agency promotions must generally follow "competitive procedures." *See* 5 C.F.R. § 335.103(c)(1). But the regulation also includes a number of exceptions that the Secretary has not addressed, including agencies' discretion to exempt "promotion resulting from an employee's position being classified at a higher grade because of additional duties and responsibilies [sic]," 5 C.F.R. § 335.103(c)(3)(ii), which could perhaps apply here in light of Williams's allegations that she performed work equivalent to or more difficult than GS-12 paralegal specialists in her office. The Secretary also has not addressed whether, if there was in fact a practice of awarding noncompetitive grade promotions based on performance or as a matter of course, any violation of federal service regulations implicated by that practice would preclude Williams bringing a Title VII claim. The Court declines to dismiss Williams's claim based on a potential conflict with regulations governing promotion.

Whether Williams has actually and plausibly alleged promotion as a matter of course is a closer question. She alleges that one of the two ways "that Fines, Penalties and Forfeitures San Francisco Office promotes employees is by advancing employees by grade level," without "the creation of a new position nor any posting soliciting applications for the position," which Williams refers to as "grade promotion." 5AC ¶ 15. Williams's allegation that in early 2016 she "asked Ms. Zeng to help her work towards being promoted and to speak with Mr. Holsopple about a grade promotion" suggests that Williams at least believed that grade promotions were available on an individual basis. *See id.* ¶ 16. On the other hand, the clearest examples of such "grade promotions" in her complaint are the department-wide upgrades of *all* GS-11 paralegal specialist and GS-12 supervisory paralegal specialist positions in December of 2019, which are not

14

analogous to the type of individual promotion that Williams claims she should have received. *See* ¶¶ 53–54. The nature of the earlier November 2018 promotions for twelve GS-11 paralegal specialists in eight non-San Francisco offices is not entirely clear—Williams alleges that the announcement indicated the new GS-12 positions would be treated as competitive vacancies, but that she never received notices of such vacancies despite routinely receiving notice of other vacancies in the past, and that the new GS-12 positions merely replaced or "upgraded" existing GS-11 positions rather than increasing the total number of paralegal specialists. *Id.* ¶ 33.

In a motion under Rule 12(b)(6), the Court must take Williams's factual allegations as true and construe them in the light most favorable to her. *Parks Sch. of Bus.*, 51 F.3d at 1484. Williams's fifth amended complaint defines the term "grade promotion" as promotion for an existing employee without the creation of a new position or the solicitation of applicants. 5AC ¶ 15. She alleges that the 2018 promotions of twelve paralegal specialists were "grade promotions" as that term is defined in her complaint. *Id.* ¶ 34. While there is some tension between that allegation and the allegation that an announcement indicated those positions would be treated as competitive vacancies, there is no allegation that the positions were in fact treated as competitive vacancies. Viewing the allegations in the light most favorable to Williams, the Court concludes that she has alleged a mechanism by which she could have been promoted without either applying for an open position or an "entirely new" position being created for which her office might have had no need. Williams also alleges, in a manner at least sufficient to survive a motion under Rule 12(b)(6), that she was qualified for a promotion to GS-12 in that she was already performing work at that level, *id.* ¶¶ 16, 28, that she could have received such a promotion in 2018 had Zeng recommended it, *id.* ¶ 43, and that Zeng and Holsopple harbored racial and retaliatory animus towards Williams, *see* Order re TAC at 15–17.

While the circumstances here are not directly analogous to cases allowing Title VII claims to proceed based on "nonselective, serial" or "matter of course" promotions from which a plaintiff was excluded—*see Hishon v. King & Spalding*, 467 U.S. 69, 71–79 (1984); *Loyd v. Phillips Bros.*, 25 F.3d 518, 523 (7th Cir. 1994)—Williams has alleged sufficiently distinct facts from cases finding no need for an employee to create "'an entirely new position,'" *see* Order re SAC at 17–18

15

(quoting, *e.g.*, *McQuilkin v. Del. River Port Auth.*, No. CIV. 11-652 JBS/AMD, 2013 WL 5936983, at *14 (D.N.J. Nov. 6, 2013)). If Williams's supervisors in fact had the authority to secure her a noncompetitive promotion for which she was qualified but declined to do so based on discrimination or retaliation, the Secretary has cited no authority holding that Title VII fails to reach such conduct.[8] The Secretary's motion to dismiss is therefore DENIED.

## IV. CONCLUSION

For the reasons discussed above, the Secretary's motion is DENIED, and Williams's claims may proceed based on a theory of failure to promote, as well as the theories allowed to proceed by the Court's previous order.

**IT IS SO ORDERED.**

Dated: May 26, 2020

JOSEPH C. SPERO
Chief Magistrate Judge

---

[8] On the other hand, if the Secretary is correct that Williams's supervisors lacked such authority and noncompetitive grade promotions only occurred in response to reevaluating the nature of certain positions on a department-wide basis, that would likely be a straightforward matter for summary judgment.